BRAXTON H. TAYLOR AND LESLIE J. TAYLOR, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL-REVENUE, Respondent Taylor v. Commissioner
Docket Nos. 8325-87; 8405-87; 8406-87.
United States Tax Court
T.C. Memo 1989-261; 1989 Tax Ct. Memo LEXIS 261; 57 T.C.M. (CCH) 558; T.C.M. (RIA) 89261; May 30, 1989. *261 Held: Petitioners are liable for additions to tax pursuant to section 6653(b). Samuel R. McCord, for the petitioners. Charles P. Hanfman, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated December 31, 1986, respondent determined deficiencies in and additions to petitioners Braxton H. and Leslie J. Taylor's Federal income tax for *262 the years and in the amounts as follows: Addition to Tax
Year
Deficiency
Section 6653(b) [2]
1979
$ 4,745
$ 2,372.50 1980
9,176
4,588.00
1981
5,953
2,976.50
By statutory notice dated February 10, 1987, respondent determined deficiencies in and additions to petitioners Royce W. and Barbara A. Ray's Federal income tax for the years and in the amounts as follows: Additions to Tax
Year
Deficiency
Section 6653(b)
1979
$  5,162
$ 4,173.00
1980
8,742
4,371.00
1981
10,304
5,152.00
By statutory notice dated February 10, 1987, respondent determined deficiencies in and additions to petitioner Unique Industries, Inc.'s Federal income tax for the years and in the amounts as follows: Addition to Tax
Ending 10/31
Deficiency
Section 6653(b)
1978
$  1,215
$    608.00
1979
10,113
5,057.00
1980
31,845
15,923.00
1981
13,053
6,527.00
The *263 parties have reached agreement with respect to petitioners' underlying tax liabilities. The remaining issues are petitioners' liability for additions to tax for fraud and whether the statute of limitations bars assessment and collection of Federal income taxes with respect to the individual petitioners. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation, supplemental stipulations, and attached exhibits are incorporated herein by this reference. At the time its petition was filed, petitioner Unique Industries, Inc. (Unique) had its principal place of business in Calera, Alabama. At the time their petitions were filed, petitioners Braxton H. and Leslie J. Taylor resided in Birmingham, Alabama, and petitioners Royce W. Ray and Barbara A. Ray lived in Jemison, Alabama. Unique has been in the business of manufacturing steel fasteners and other fabricated metal products since it was organized in 1975. At all times relevant to this proceeding, Unique's president was Braxton H. Taylor (Taylor) and its vice-president was Royce W. Ray. Each was a 50-percent shareholder in Unique and had a 50-percent share in Unique's profits. Taylor was in *264 charge of Unique's books and sales, while Ray supervised the shop floor. Revenue agent Charles Traywick (the Agent) began his examination of Unique's tax return for the fiscal year ending October 31, 1981, on March 22, 1982. His examination was subsequently expanded to include all the years at issue for Unique, Taylor, [3] and Ray. As his examination progressed, the Agent found that certain invoices for expenses charged to particular accounts were missing. The Agent presented a list of the missing invoices to Taylor on April 9, 1982. On April 14, Taylor produced the missing invoices. Those invoices reflected the following personal expenses paid on behalf of Taylor and Ray: [4]
Mini-warehouse expenses (Ray)
$    458.00
Bird Building Materials (Ray)
3,274.38
Meyer Electric Supply Co. (both)
[5] 4,333.56
W. V. Brown Lumber Co. (both)
4,661.98
United Supply Company, Inc. (Taylor)
417.24
DeMarco Concrete Block Co. (Taylor)
183.75
Hill Concrete and Supply Co. (Ray)
543.38
Seaman Timber Co. (Ray)
847.89
Gas Engineers, Inc. (Taylor)
3,568.68
H & H Construction Co. (Ray)
2,475.00
Knight Discount Building Supply (Ray)
1,994.95
Jerry C. Stafford (Ray)
1,000.00
Joe Porter (Ray)
2,823.50
Moore-Handley, Inc. (both)
17,862.78
*265 Some invoices were marked "Royce Ray job," or contained directions to Ray's home. Those invoices were for materials for the construction of Ray's home in Jemison. During the years in issue, none of these expenditures were recorded on Unique's books and records as personal in nature. As part of their agreement to split profits, Ray reimbursed Taylor for one-half of the cost of all materials purchased by Unique and used in the construction of that home. During the course of his examination, the Agent found that Unique wrote more than one check every month to certain area utility companies. This finding alerted him to the possibility that Unique was paying the personal utility bills of Taylor and Ray. On April 14, 1982, Taylor confirmed that *266 Unique paid Ray's and his utility bills for a period of approximately 18 months. The utility bills paid by Unique on behalf of Taylor and Ray are as follows: Alabama Power Co. (Taylor)
$  2,782.83
Alabama Gas Co. (Taylor)
649.11
Central Alabama Electric
2,380.65
Cooperative (Ray)
Taylor had been told by Unique's accountant that Unique's payment of personal utility bills was proper since they were doing corporate work in their homes. Taylor was told that these payments for which Unique claimed deductions, would be in lieu of a deduction for rent. [6] However, none of the payments for personal expenses or utility bills were included in the income of either Taylor or Ray for the years in issue. During the years in issue, Unique prepared invoices in triplicate for billing its customers. The first two copies of each invoice were sent to the customer, and the third was retained by Taylor in a transfer folder until paid. A notation of the outstanding debt was *267 made on the customer's ledger sheet at that time. When an invoice was paid, the payment would be recorded on that ledger sheet. Each check received as payment was stamped "Unique Industries, Inc., For Deposit Only," and deposited in Unique's bank account. Invoices for certain customers were held by Taylor rather than placed in the transfer folder. When payment was received, the checks would be endorsed by either Taylor or Ray with Unique's name and their own signature. The proceeds of checks handled in this manner were cashed and the proceeds divided between Taylor and Ray in accordance with their plan to split the profits of the corporation on a fifty-fifty basis. [7]
The Agent discovered these unreported gross receipts when he could not reconcile Unique's sales journals with the invoices which had been produced. He then inquired of Taylor as to any unreported gross receipts, and upon receiving a negative reply, issued summonses to several of Unique's customers, who produced the missing invoices. The customers whose invoices were handled in this manner and the amounts are as follows: Crusher and Screen Sales, Inc.
[8] $   140.00
Cadle Construction Co.
60.05
Wayne Davis Construction Co.
8,009.05
Air Engineers, Inc.
1,000.00
Southern Foundry, Inc.
755.90
Jerry Stafford
[9] 691.10
*268 None of these receipts were reported on the income tax returns of Unique, Taylor, or Ray. Taylor did all of Unique's bookkeeping during its first year in business. Unique first retained a part-time accountant in 1976. However, Unique's bookkeeping system consisted of no more than keeping track of sales and purchases by monitoring invoices and checks until Unique hired an accountant to upgrade its bookkeeping system in late 1978 or early 1979. When this upgraded system proved unsatisfactory, Unique hired the Birmingham accounting firm of Linder, Hill and Moore (Linder Hill). Linder Hill modified Unique's bookkeeping system and prepared its income tax returns for its fiscal years ending October 31, 1978, 1979, and 1980. Linder Hill prepared Taylor's and Ray's tax returns for 1979 and 1980. In early 1981, Unique again changed accountants and retained Steven Miller of Matthews *269 and Miller in Birmingham, who set up a computerized bookkeeping system. Since that date, Unique has received monthly statements and annual reviews. Miller set up individual accounts for Taylor and Ray, and prepared tax returns for Taylor, Ray, and Unique for their years ending in 1981. It took Miller approximately 2 years to get the system running smoothly. Until respondent commenced his examination of petitioners, Miller was unaware that corporate funds were being used for personal expenses. On September 26, 1985, Taylor pled guilty to willfully subscribing to a false corporate Federal income tax return for Unique for its fiscal year ending October 31, 1980, in violation of section 7206(1). On that same date, Ray pleaded guilty to willfully subscribing to a false individual Federal income tax return for 1980. OPINION Under section 6653(b) respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. ; *270 . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. without published opinion ; . Fraud is not to be imputed or presumed. ; . However, fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. ; (1969). The intent to conceal or mislead may be inferred from a pattern of conduct. See . A pattern of consistent underreporting of income, especially when accompanied by other circumstances *271 showing an intent to conceal, justify the inference of fraud. See ; However, the mere failure to report income is not sufficient to establish fraud. . Fraud may not be found under "circumstances which at most create only suspicion." ; . Other badges of fraud which may be taken into account include: the making of false and inconsistent statements to revenue agents, ; the filing of false documents, , affd. ; understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets and failure to cooperate with tax authorities. , affg. a Memorandum *272 Opinion of this Court. Petitioners' defense is primarily one of negligence. Petitioners argue that while they might have even been grossly negligent, they did not evade taxes with the requisite intent to defraud. Petitioners also argue that they relied upon the advice of Unique's accountants. We find petitioners' arguments unconvincing, and find for respondent on this issue. One indicia of fraud is petitioners' pattern of corporate payment of personal expenses which extended throughout the years in issue. Ray admitted that he knew that Unique's payment of expenses incurred in connection with the construction of his home was includable in his income. While Ray testified that he thought that such payments were being reported on his return, even a cursory examination of his returns for the years in issue would have revealed these substantial omissions. Moreover, since none of the omitted gross receipts or corporate payment of personal expenses was apparent from Unique's books, it was incumbent upon petitioners to inform first Linder Hill and later Miller of that fact. Petitioners argue both that invoices with respect to these sales were misplaced in another year's transfer folder *273 and that the Agent did not ask for them. We cannot accept the fact that if any invoices were actually misplaced, they were limited to invoices representing unreported income, and included all such invoices. Secondly, the Agent made a general request of Taylor with respect to unreported income rather than a merchant specific request for invoices. Because of Taylor's failure to produce receipts with respect to unreported income, the Agent was required to make use of respondent's subpoena power. Concealment and noncooperation are badges of fraud. The Agent was required to use respondent's summons authority to gain access to those invoices. It was only then that Taylor cooperated fully. Although subtle, petitioners' concealment and noncooperation nevertheless constitute evidence of an intent to defraud. Another badge of fraud on the part of all three petitioners is their consistent failure to report certain of Unique's gross receipts. We do not find anything fraudulent about the arrangement between Taylor and Ray to split Unique's earning on a fifty-fifty basis; this arrangement, which had been in effect since the corporation's founding, *274 was no more than a reflection of their equal stock ownership. However, the manner in which the arrangement was executed was inherently fraudulent. Taylor and Ray readily admitted that they diverted corporate receipts from the sale of merchandise to certain customers. Neither of them offered any convincing explanation of why these receipts were omitted from income on both Unique's corporate return and their respective individual returns. Rather, Taylor testified that these diverted receipts were thought of as spending money for him and Ray. Fraud is also evident in Unique's payment of Taylor's and Ray's personal utility bills. Taylor and Ray testified and now argue that the payment and deduction of those bills by Unique, and their failure to report those payments as income, was on the advice of Unique's accountant, citing . There is no independent support in the record for this self-serving testimony. We need not address this issue, since section 6653(b) applies if any portion of an underpayment is due to fraud, and we find fraud with respect both to petitioners' unreported income and Unique's payment of personal *275 expenses. Petitioners rely upon the haphazard nature in which the corporate books were kept in the years before the Court as a defense. Carelessness in the preparation and maintenance of books and records does not constitute fraud, ; however, we think that more than mere carelessness was involved in the maintenance of Unique's books and records. With respect to Unique's unreported gross receipts, Taylor simply did not enter the receipt of income onto Unique's books. With respect to personal expenses, neither Unique, Taylor, nor Ray maintained records reflecting the payment of such expenses as distributions to Taylor and Ray. Finally, petitioners argue that after they retained adequate accounting expertise, accounts were set up for themselves whereby personal expenses paid by Unique were denominated as dividends to Taylor and Ray. However, petitioners did not begin this procedure until after the years in issue, and after the examination of their corporate and personal tax returns began. Another factor in our determination is the conviction on a plea of guilty of Taylor and Ray for willfully subscribing to *276 false tax returns, Taylor on behalf of Unique and Ray individually. While these convictions pursuant to section 7206(1) do not collaterally estop petitioners from denying fraud in the years before the Court, they are a factor to be taken into consideration. . Finally, we find that the fraudulent conduct of Taylor and Ray is to be imputed to Unique. A corporation may act only through its officers and agents, , and Unique was intimately involved with the fraudulent activities of Taylor and Ray. We therefore find that the corporation is also liable for the addition to tax pursuant to section 6653(b). On the basis of the entire record, we conclude that petitioners' underpayment was due to fraud. Therefore, assessment and collection are not barred by any statute of limitations. Sec. 6501(c)(1). Because of respondent's concessions with respect to the underlying deficiencies, Decision will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Unique Industries, Inc., docket No. 8405-87; Royce W. Ray and Barbara A. Ray, docket No. 8406-87.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent has conceded that the addition to tax for fraud does not apply to petitioners Leslie J. Taylor and Barbara A. Ray. All further references to petitioners are to Unique, Braxton H. Taylor, and Royce W. Ray. ↩
4. This schedule includes only those expenses which the parties have stipulated to be personal in nature. ↩
5. Only a portion of the payments to Meyer Electric Supply Co. was personal expenses of Taylor and Ray.↩
6. When asked by the Agent if he knew that the amounts which Unique paid on his behalf were taxable to him, Ray responded that he knew they were taxable and thought that they had been reported.↩
7. Taylor described this procedure as "basically like a cash sale type of thing."↩
8. while the record contains other checks from Crusher and Screen Sales, Inc., they do not bear the endorsements of either Taylor or Ray. ↩
9. No invoice was ever issued to Jerry Stafford. However, he paid for roofing materials with a check made payable to unique that was handled in this manner.↩